UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMERISURE MUTUAL INSURANCE COMPANY, ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | No. 4:04CV430-DJS |
| PARIC CORPORATION, ) ESA MANAGEMENT, INC., and ) ESA MISSOURI, INC., ) ) | |
| Defendants. ) | |

### ORDER

Now before the Court are cross motions for summary judgment by plaintiff and defendants ESA Management and ESA Missouri (hereinafter collectively "the ESA defendants").[1] The plaintiff insurer has filed this action seeking a declaratory judgment that three policies containing commercial general liability coverage do not give plaintiff a duty to defend or indemnify defendant Paric, the insured, in three underlying Missouri state court actions (hereinafter "underlying actions") brought by the ESA defendants for the allegedly faulty construction of three hotels. (Second Am. Compl. [Doc. #73] at 1-2.) The Court finds a possibility of coverage under the policies, thus placing upon plaintiff a duty to defend defendant Paric in the underlying

---

[1] The Court has granted defendant Paric's request to join in the ESA defendants' motion for summary judgment.

actions, but finds that the issue of whether plaintiff has a duty to indemnify defendant Paric is not yet ripe.

## **Background**

Defendant Paric entered into contracts to build three hotels in St. Louis County, St. Charles County, and Greene County, Missouri. The ESA defendants have filed suit in each of those counties concerning the hotel located in each respective county (one in St. Louis County bearing case number 03CC-3082, one in St. Charles County bearing case number 04CV124346, and one in Greene County bearing case number 103CC3419). In these underlying actions, the ESA defendants seek damages from defendant Paric for various deficiencies and defects in the hotels relating to the Exterior Insulation and Finish System (hereinafter "EIFS"), also known as synthetic stucco, and the windows, among other problems.

Plaintiff issued to defendant Paric a policy of general liability insurance from September 30, 1996 to September 30, 1997, a renewal of that policy from September 30, 1997 to September 30, 1998, and a policy of umbrella liability insurance from September 30, 1996 to September 30, 1997. The three policies contain the following language:

> **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those

> damages. However, we will have no duty to
> defend the insured against any "suit" seeking
> damages for "bodily injury" or "property
> damage" to which this insurance does not apply
> . . .
> **b.** This insurance applies to "bodily injury"
> and "property damage" only if:
> > **(1)** The "bodily injury" or "property
> > damage" is caused by an "occurrence" that
> > takes place in the "coverage territory";
> > and
> > **(2)** The "bodily injury" or "property
> > damage" occurs during the policy period.

(See Second Am. Compl. Ex. A1, B1, and C1 [Docs. #4, 9, 14].)[2] The policies define occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (See Second Am. Compl. Ex. A1, B1, and C1 [Docs. #4, 9, 14].) The policies also define property damage as:

> **a.** Physical injury to tangible property, including all
> resulting loss of use of that property. All such loss of
> use shall be deemed to occur at the time of the physical
> injury that caused it; or
> **b.** Loss of use of tangible property that is not
> physically injured. All such loss of use shall be deemed
> to occur at the time of the "occurrence" that caused it.

(See Second Am. Compl. Ex. A1, B1, and C1 [Docs. #4, 9, 14].) The policies contain an exclusion discussed by plaintiff in its second amended complaint. Exclusion L in defendant Paric's policy reads as follows:

---

[2] The provisions of the umbrella policy are the same, except that it provides that "We will pay those sums which exceed the limit of 'underlying liability insurance' that the insured becomes legally obligated to pay . . . ." (See Second Am. Compl. Ex. C1 [Doc. # 14].)

3

> **Exclusions**
> This insurance does not apply to . . .
> > **l. Damage to Your Work**
> > "Property Damage" to that particular part of "your work" that is defective or actively malfunctions.
> > This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(See Second Am. Compl. Ex. A1 and B1 [Docs. #4, 9].) In the umbrella policy, the exclusion reads as follows:

> **l. Damage to Your Work**
> "Property Damage" to "your work" arising out of it or any part of it and included in the "products – completed operations hazard".
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(See Second Am. Compl. Ex. C1 [Doc. #14].)

ESA had entered into a deal with Dryvit Systems, Inc. to supply the EIFS (synthetic stucco) for the three hotels built by defendant Paric. According to the petitions in St. Louis County and Greene County, the EIFS was applied by defendant Paric's subcontractor, who was also made a party to those suits. (See St. Louis County Am. Pet. [Doc. #79.1], Greene County Pet. [Doc. #73.17].) No subcontractor, thus far, has been made a party to the St. Charles County suit. The EIFS at the St. Charles County hotel was apparently installed by defendant Paric itself. (See St. Charles County Pet. [Doc. #73.16].) ESA also entered into a deal with Weather-Tite, Inc. to purchase windows manufactured by Quaker Windows & Doors (hereinafter "Quaker") to use in all of the ESA

4

defendants' hotels. Both Quaker and Weather-Tite are parties to all three of the underlying actions.

The ESA Defendants allege that due to the actions of defendant Paric, Dryvit, Quaker, Weather-Tite, and defendant Paric's subcontractor the EIFS and the windows installed in the hotels leaked, thus damaging the hotels, the EIFS, the windows, sheathing, insulation, structural members, interior wall finishes, floors, carpeting and other property both inside and outside of the hotels. (See, e.g., St. Louis County Am. Pet. [Doc. #79.1] ¶ 26, St. Charles County Pet. [Doc. #73.16] ¶ 33, Greene County Pet. [Doc. #73.17] ¶ 33.) With respect to the windows and the EIFS, the ESA defendants also allege that the products had defects which were hidden from both the ESA defendants and defendant Paric. (See, e.g., St. Louis County Am. Pet. [Doc. #79.1] ¶¶ 96, 100, St. Charles County Pet. [Doc. #73.16] ¶¶ 107, 223, 224, Greene County Pet. [Doc. #73.17] ¶¶ 61, 68, 122, 124.)

In all three underlying actions, the ESA defendants assert claims of breach of contract, breach of express warranty, and breach of implied warranty. In St. Louis County and Greene County, the ESA defendants also assert claims of negligence. The claims generally assert that defendant Paric was under an obligation to build the hotels with due care, in a workmanlike manner, and in accordance with acceptable building codes, plans and specifications. They then allege that the work performed by defendant Paric was defective and contrary to workmanlike practice,

5

and contrary to the plans, specifications and other contract documents.

Plaintiff has declined defendant Paric's request that plaintiff defend it in these actions and indemnify it against any judgment entered against it. Plaintiff brought this action seeking a declaratory judgment that it does not have a duty to defend or indemnify defendant Paric in the underlying actions. Defendant Paric has asserted three counterclaims. In Count I, it seeks a declaratory judgment that plaintiff does have a duty to defend and indemnify defendant Paric. In Count II, it asserts a claim of breach of contract, and in Count III it asserts a claim of vexatious refusal.[3]

For the reasons stated below, plaintiff's motion for summary judgment is denied, and the ESA defendants' motion for summary judgment, which defendant Paric joined, is granted in part. With respect to plaintiff's duty to defend defendant Paric in the three underlying actions, the Court will enter summary judgment against plaintiff and for defendants on plaintiff's claim and Count I (Declaratory Judgment) of defendant Paric's counterclaim. With respect to plaintiff's duty to indemnify defendant Paric in the three underlying actions, the Court will dismiss without prejudice plaintiff's claim and Count I (Declaratory Judgment) of defendant

---

[3] The Court only addresses plaintiff's claim and defendant Paric's Count I (Declaratory Judgment), as the motions before the Court do not address defendant Paric's Count II (Breach of Contract) and Count III (Vexatious Refusal).

Paric's counterclaim as not yet ripe. Counts II and III of defendant Paric's counterclaims will still remain.

## **Discussion**

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003), quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998).

"Matters of interpretation and application of an insurance contract are matters of law." Henes Mfg. LLC v. Amerisure Ins. Co., 5 S.W.3d 544, 545 (Mo. App. 1999). In interpreting insurance contracts, "[a] court must give meaning to all terms and, where possible, harmonize those terms in order to accomplish the intention of the parties. Insurance contracts are designed to furnish protection, therefore, courts will interpret in

favor of coverage rather than against it." Id. (citations omitted). "The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependant on the probable liability to pay based on the facts ascertained through trial." Am. States Ins. Co. v. Herman C. Kempker Constr. Co., 71 S.W.3d 232, 236 (Mo. App. 2002). Thus, the duty to defend is broader than the duty to indemnify. Auto Club Family Ins. Co. v. Jacobsen, 19 S.W.3d 178, 183 (Mo. App. 2000).

"The duty to defend is determined by comparing the language of the policy with the allegations of the petition in the action against the insured." Valentine-Radford, Inc. v. Am. Motorists Ins. Co., 990 S.W.2d 47, 51 (Mo. App. 1999), citing Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 210 (Mo. App. 1995). "The presence of some insured claims in the underlying petition gives rise to a duty to defend, even though uninsured claims or claims beyond coverage may also be present." Wood v. Safeco Ins. Co. of Am., 980 S.W.2d 43, 47 (Mo. App. 1998), quoting Scottsdale Ins. Co. v. Ratliff, 927 S.W.2d 531, 534 (Mo. App. 1996). The burden is on the insured to prove that there was coverage under the policy. State Farm Fire & Cas. Co. v. D.T.S., 867 S.W.2d 642, 644 (Mo. App. 1993). "The burden of proving coverage remains on those who are seeking coverage even though they are denominated as defendants in a declaratory judgment action."

Id. However, the insurer has the burden to prove that an exclusion applies. Id.

Plaintiff asserts that allegations in the underlying cases do not constitute an "occurrence," and thus the damages complained of in the underlying complaints are not covered under the policies. In response, the ESA defendants allege that the petitions do discuss an occurrence as defendant Paric was negligent in its actions and in assigning the work to subcontractors who installed defective equipment in a negligent manner. The Court finds that the petitions in the underlying cases do allege the possibility of an "occurrence," thus plaintiff has a duty to defend defendant Paric. The alleged occurrence does appear to have taken place during the policy coverage. None of the exceptions in the policies remove the possibility that the policies cover defendant Paric in the underlying actions. However, the Court finds that because the underlying actions are still pending, the issue of whether plaintiff has a duty to indemnify defendant Paric with respect to each of the actions is not yet ripe.

**A. The Underlying Actions Do Allege the Possibility of an "Occurrence" Under the Policies**

Unless ambiguity exists, the Court "must enforce the polic[ies] as written, giving the language of the polic[ies] its ordinary meaning." Am. States Ins. Co. v. Mathis, 974 S.W.2d 647, 649 (Mo. App. 1998). The policies define "occurrence" as "an accident, including continuous or repeated exposure to

9

substantially the same harmful conditions." (See Second Am. Compl. Ex. A1, B1, and C1 [Docs. #4, 9, 14].) Although not defined by the policies, the term "accident" as used in the policies is defined by its common meaning, which under Missouri law is:

> An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as to die by an accident.

Hawkeye-Security Ins. Co. v. Davis, 6 S.W.3d 419, 425 (Mo. App. 1999), quoting Mathis, 974 S.W.2d at 650.

In determining whether the pleadings against the insured allege an "occurrence" or "accident," courts must determine whether the allegations as a whole, and not simply the names of the causes of action or the character of the behavior, reveal an unexpected or undesigned event which the insured did not intend. See Koch Eng'g Co. v. Gibralter Cas. Co., 78 F.3d 1291, 1294 (8th Cir. 1996) (holding that the district court's finding of recklessness alone does not support the inference of intent, nor does it support the inference that an accident did not occur). For example, the term "accident" does not necessarily exclude the cause of action of negligence. See id.; Wood, 980 S.W.2d at 49. However, at least one court has found that an allegation of negligence does not "constitute[] an 'accident,' and hence an 'occurrence.'" Cincinnati Ins. Co. v. Venetian Terrazzo, Inc., 198 F. Supp. 2d 1074, 1079 (E.D. Mo. 2001) (holding that defendant's alleged

10

negligence, or the negligence of another party, in pouring a cement sub-floor does not constitute an accident); see also Mathis, 947 S.W.2d at 648, 650 (addressing underlying causes of action of both negligence and breach of contract, but only holding that the breaches of contract did not constitute an occurrence).

Courts in determining whether a complaint alleges an accident or occurrence have focused on a multitude of factors, including, but not limited to, whether the insured intended, expected, or desired the results, see Koch, 78 F.3d at 1294, and Davis, 6 S.W.3d at 427 (determining whether "an undesigned or unexpected event" occurred), whether the alleged occurrence was a business risk not covered by the general liability policy, see Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 77 (Mo. 1998), and Venetian Terrazzo, 198 F. Supp. 2d at 1079, and whether excluding the alleged occurrence from coverage essentially leaves the insured without any coverage, see Missouri Terrazzo Co. v. Iowa Nat'l Mut. Ins. Co., 566 F. Supp. 546, 552 (E.D. Mo. 1983) (finding that "if the liability policy were construed to cover only accidents not involving breach of warranty or negligence, then no protection would be given to the insured"). In determining whether an insured contractor intended, expected, or desired an event, courts have looked to whether the "performance of [the] contract according to the terms specified therein was within [the insured contractor's] control and management." Davis, 6 S.W.3d at 426, citing Mathis, 974 S.W.2d at 650. However, when considering the coverage of a

general contractor, courts have not differentiated between cases where the alleged negligence was the result of the work of a subcontractor or the general contractor. Compare Davis, 6 S.W.3d at 426-27 (holding that the contractor was not covered under its general liability policy after failing to perform the contract, notwithstanding the allegation that subcontractors performed most of the work on the project), with Mathis, 974 S.W.2d at 650 (holding that the contractor was not covered under its general liability policy after failing to perform the contract).

In considering the above factors, courts interpreting Missouri law have looked to whether the pleadings in each underlying case reveal an unintended occurrence or accident, making each determination case specific. For example, two courts when addressing whether the faulty installation of a terrazzo floor was an occurrence disagreed as to whether the pleadings in the respective cases alleged an occurrence or accident. Compare Missouri Terrazzo, 566 F. Supp. at 550, 552-53 (holding that the alleged negligent installation of and failure to test a concrete sub-bed and flooring constitute an occurrence), with Venetian Terrazzo, 198 F. Supp. 2d at 1079 (finding that the alleged negligence in pouring a cement sub-floor does not constitute an occurrence). Another court found that plaintiff's failure to guard against a corrosive which plugged the distribution system it manufactured constitutes an occurrence. Koch, 78 F.3d at 1293-94. Alternatively, courts have also found that a breach of contract for

failure to meet design specifications, <u>Mathis</u>, 974 S.W.2d at 650, and the use of inferior materials and faulty workmanship do not constitute an accident or occurrence, <u>Davis</u>, 6 S.W.3d at 426.

The ESA defendants have asserted negligence claims against defendant Paric in two of the underlying actions where a subcontractor installed the EIFS. In the remaining action, defendant Paric apparently installed the EIFS itself and no negligence claim was asserted against defendant Paric. However, the Court does not find that these differences rule out the possibility of plaintiff's coverage in any of the underlying actions. Before addressing the exclusions, the Court is not concerned with whether the contractor or a subcontractor actually installed the EIFS or the windows. Additionally, the Court is not concerned with the names of the underlying causes of action. The Court is only concerned, at this stage, with whether the underlying actions allege the possibility of an occurrence.

Given the allegedly hidden nature of the defects in the EIFS and the windows, in addition to the fact that ESA and not Paric chose the EIFS and the windows, it appears that Paric did not intend, expect or desire that the EIFS or the windows would leak, thus damaging the hotels. Additionally, given that the ESA defendants made those choices, this does not appear to be the type of business risk assumed by defendant Paric in building a hotel. Even though defendant Paric would still have a fairly substantial amount of coverage from the policies even without coverage for

13

these alleged injuries, the underlying actions do allege the possibility of an accident, and thus an occurrence. After considering the aforementioned factors examined by other courts, the Court is persuaded that the petitions in all three of the underlying actions do allege the possibility of an occurrence, thus giving plaintiff the duty to defend defendant Paric in the underlying actions.

**B.   The Underlying Actions Allege the Possibility of Physical Injury to Tangible Property**

To fall under the policies issued by plaintiff, property damage, "physical injury to tangible property," needs to have taken place as part of the occurrence. In determining whether plaintiff has a duty to defend, the Court need only consider whether there is a possibility of property damage alleged in the underlying actions. Am. States Ins. Co. v. Herman C. Kempker Constr. Co., 71 S.W.3d 232, 236 (Mo. App. 2002).

In the case of Esicorp, Inc. v. Liberty Mut. Ins. Co., the court held that "[t]he integration of defective materials into a home, without more, was not covered property damage." 266 F.3d 859, 862-63 (8th Cir. 2001). In the underlying actions, the ESA defendants allege that water leaking through the defective and poorly installed EIFS and windows caused damage to the EIFS, windows, "sheathing, insulation, structural members, interior wall finishes, floors and carpeting." (St. Louis County Am. Pet. [Doc.

14

#79.1] ¶ 26, St. Charles County Pet. [Doc. #73.16] ¶ 70, Greene County Pet. [Doc. #73.17] ¶ 33.)

Plaintiff asserts that damage to all these different parts of the hotel were all part of defendant Paric's product, and thus there was no physical damage to anything but defendant Paric's product. Plaintiff cites Hawkeye-Security Ins. Co. v. Davis, 6 S.W.3d 419 (Mo. App. 1999), for the proposition that physical damage must occur to something other than the builder's own product. The court in Davis was interpreting an exclusion which specifically stated: "This insurance does not apply to: . . . Property damage to: . . . that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." Davis, 6 S.W.3d at 427. Not only is that particular language not present in the policies at issue here, but the Court needs to address whether coverage exists before addressing any exclusions, and plaintiff has repeatedly stated that it is not relying on any exclusion. (Pl.'s Mem. Opp. ESA's Mot. Summ. J. [Doc. #62] at 11.)

Even were the Court to interpret Davis as plaintiff urges, damage is alleged to have occurred to the EIFS and the windows, not to mention other interior aspects of the hotels. According to the pleadings, the ESA defendants allegedly selected and purchased the windows and the EIFS, thus making them the ESA defendants' property. (St. Louis County Am. Pet. [Doc. #79.1] ¶¶

18-20; St. Charles County Pet. [Doc. #73.16] ¶¶ 21-35, 61-63; Greene County Pet. [Doc. #73.17] ¶¶ 23-25, 69, 75, 76.) As the ESA defendants' petitions in the underlying actions state that the repair of the windows, the EIFS, and other property is necessary due to defendant Paric's actions (St. Louis County Am. Pet. [Doc. #79.1] ¶ 25; St. Charles County Pet. [Doc. #73.16] ¶ 69; Greene County Pet. [Doc. #73.17] ¶ 32), physical injury both to defendant Paric's product and "other property" has occurred. Thus, the underlying actions do allege the possibility of property damage within the meaning of the policies because of the occurrence.

## C. The Possibility Exists That the Alleged Occurrence Took Place in Part During Defendant Paric's Policy Coverage

The Court next addresses plaintiff's assertion that the alleged occurrence did not take place during defendant Paric's policy coverage.[4] "It is fairly well settled in Missouri, that the time of an 'occurrence' within the meaning of an indemnity policy is at the time the damage was sustained and not the time when the negligent or wrongful act was committed." U.S. v. Conservation Chemical Co., 653 F. Supp. 152, 195 (W.D. Mo. 1986) (citations omitted). Coverage would be triggered when the injury actually occurs regardless of whether the damages are diagnosable during the policy period. See Continental Ins. Cos. v. Northeastern Pharm. &

---

[4] Plaintiff did abandon this argument during the course of briefing the cross motions for summary judgment. (Pl.'s Mem. Opp. ESA's Mot. Summ. J. [Doc. #62] at 10.)

Chem. Co., 842 F.2d 977, 984 (8th Cir. 1988). There is a possibility that the damage, at least in part, was sustained during the coverage period between September 30, 1996 and September 30, 1998. Thus, the underlying actions allege the possibility of an occurrence during the coverage period.

**D.   Exclusions in the Policies Do Not Exclude Defendant Paric from Coverage**

Before examining whether an exclusion applies, the Court must first determine whether there was "an insured event, i.e., an obligation of indemnity undertaken by the policy for this type of problem." Davis, 6 S.W.3d at 427. Having found the possibility of coverage in the underlying pleadings, the Court now turns to Exclusion L, as plaintiff asserts in its complaint that this exclusion excludes the alleged occurrence from coverage.[5] (Second Am. Compl. [Doc. #73] at 22, 23.) "An exclusion is a policy provision which declares that certain causes of loss, or certain consequences of an insured event are not covered by the policy." Davis, 6 S.W.3d at 427 (citation omitted).

The policies exclude coverage for "'property damage' to that particular part of 'your work' that is defective or actively

---

[5] The Court addresses the exclusion because the issue was raised in plaintiff's complaint. The Court notes that plaintiff, in its response to the ESA defendants' motion for summary judgment, asserts that "plaintiff does not rely on an exclusion." (Pl.'s Mem. Opp. ESA's Mot. Summ. J. [Doc. #62] at 2.)

17

malfunctions."[6] (See Second Am. Compl. Ex. A1 and B1 [Docs. #4, 9].) The exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (See Second Am. Compl. Ex. A1 and B1 [Docs. #4, 9].) As discussed supra, the underlying actions allege the possibility that property damage occurred not only to defendant Paric's work, the hotels, but also to the work of the subcontractors and to items such as the windows and the EIFS which the ESA defendants had purchased. Thus, a possibility exists that the underlying actions assert claims against defendant Paric, the insured, to which the exclusions do not apply.

**E. Plaintiff's Alleged Duty to Indemnify Is Not Ripe**

"[W]here the controlling facts are unknown and the duty to defend arises out of potential coverage, resolution of the duty to indemnify must await the facts." Superior Equip. Co. v. Maryland Cas. Co., 986 S.W.2d 477, 484 (Mo. App. 1998). "An insurer has a duty to defend claims falling within the ambit of the policy even if it may not ultimately be obligated to indemnify the insured." Id. at 484-85. Accordingly, "the ripeness doctrine allows the federal courts to avoid wasting scarce judicial

---

[6] As noted supra, the umbrella policy does not contain the language "that particular part" or "that is defective." It reads: "'Property Damage' to 'your work' arising out of it or any part of it and included in the 'products – completed operations hazard'." (See Second Am. Compl. Ex. C1 [Doc. #14].)

resources in attempts to resolve speculative or indeterminate factual issues." In re Bender, 368 F.3d 846, 848 (8th Cir. 2004).

The Court only has before it the current petitions in the underlying actions. A finding in the underlying actions that defendant Paric is not liable would make this Court's determinations as to the duty to indemnify merely advisory opinions. Furthermore, just as in Am. States Ins. Co. v. Herman C. Kempker Construction Co., "[t]he facts here are insufficient to sustain a judgment on the pleadings." 71 S.W.3d 232, 239 (Mo. App. 2002).

This order only addresses plaintiff's claims and Count I (Declaratory Judgment) of defendant Paric's counterclaims. Count II (Breach of Contract) and Count III (Vexatious Refusal) of defendant Paric's counterclaims remain. For the above reasons, the Court finds the possibility of coverage under the policies between plaintiff and defendant Paric. The Court therefore holds that plaintiff has a duty to defend defendant Paric in the underlying actions in St. Louis County, St. Charles County, and Greene County, Missouri. However, as to plaintiff's duty to indemnify, the Court is unable to make any determinations given the unresolved status of the underlying actions, and this Court will dismiss the coverage claims without prejudice. The parties to the insurance agreements may file the claims again when circumstances allow a determination whether plaintiff has a duty to indemnify defendant Paric under at least one of the policies.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [Doc. #45] is denied.

**IT IS FURTHER ORDERED** that ESA Management, Inc.'s and ESA Missouri, Inc.'s motion for summary judgment [Doc. #43] is granted in part and denied in part.

Dated this ___21st___ day of October, 2005.

                                              /s/Donald J. Stohr
                                              UNITED STATES DISTRICT JUDGE